15-2229
*In Re: Lehman Bros. Sec. and ERISA Litig.*

UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

August Term, 2015

(Argued: January 14, 2016     Decided: March 18, 2016)

Docket No. 15-2229

ALEX E. RINEHART, on behalf of himself and all others
similarly situated, JO ANNE BUZZO, MONIQUE MILLER
FONG, on behalf of herself and others similarly situated,
MARIA DESOUSA, LINDA DEMIZIO,

*Plaintiffs-Appellants*,

LOCALS 302 AND 612 OF THE INTERNATIONAL
UNION OF OPERATING ENGINEERS-EMPLOYERS
CONSTRUCTION INDUSTRY RETIREMENT FUND, CITY
OF SOUTH SAN FRANCISCO, CITY OF LONG BEACH,
COUNTY OF TUOLUMNE, CITY OF FREMONT, NEW
JERSEY CARPENTERS HEALTH FUND, BOILERMAKER-
BLACKSMITH NATIONAL PENSION TRUST, NEW
JERSEY CARPENTERS HEALTH FUND, on behalf of itself
and all others similarly situated, AMERICAN NATIONAL
INSURANCE COMPANY, AMERICAN NATIONAL LIFE

INSURANCE COMPANY OF TEXAS, COMPREHENSIVE INVESTMENT SERVICES INC., THE MOODY FOUNDATION, WASHINGTON STATE INVESTMENT BOARD, CHRISTOPHER CORDARO, individually and on behalf of all others similarly situated, SYLVIA REMER, ED DAVIS, JUAN TOLOSA, ARTHUR SIMONS, RALPH ROSATO, TRUSTEE J. HARRY PICKLE, ZENITH INSURANCE CO., STATE OF NEW JERSEY, DEPARTMENT OF TREASURY, DIVISION OF INVESTMENT, LINDA HARRIS, An Individual, MARIA LANE, Individually and as Trustee of the Lane Family Trust UAD 2004, MICHAEL LANE, Individually and as Trustee of the Lane Family Trust UAD 2004, STEPHEN P. GOTT, MOHAN ANANDA, RICHARD BARRETT, NEEL DUNCAN, NICK FOTINOS, FRED MANDELL, BARBARA MOSKOWITZ, STACEY OYLER, RONALD PROFILI, LAWRENCE ROSE, JOE ROTTMAN, ROY WIEGERT, MIRIAM WOLF, ISLAND MEDICAL GROUP RETIREMENT TRUST, f/b/o Irwin Ingwer, DAVID KOTZ, CARLA LA GRASSA, STUART RATNOW, SYDNEY RATNOW, STATE COMPENSATION INSURANCE FUND, CITY OF CERRITOS, CITY OF AUBURN, CITY OF BURBANK, CITY OF SAN BUENAVENTURA, CONTRA COSTA WATER DISTRICT, SAN MATEO COUNTY INVESTMENT POOL, VALLEJO SANITATION & FLOOD CONTROL DISTRICT, MARY A. ZEEB, BEN JOSEPH TRUST, EPSTEIN TRUST, STICHTING PENSIOENFONDS ABP, ALISON CHARLES, RENAUD FOURNIER, LYDIA LOSCHIAVO, ALAMEDA COUNTY EMPLOYEES' RETIREMENT ASSOCIATION, AMERICAN EUROPEAN

INSURANCE COMPANY, GOVERNMENT OF GUAM RETIREMENT FUND, INTER-LOCAL PENSION FUND GRAPHIC COMMUNICATIONS CONFERENCE OF THE INTERNATIONAL BROTHERHOOD OF TEAMSTERS, MARSHA KOSSEFF, NORTHERN IRELAND LOCAL GOVERNMENT OFFICERS' SUPERANNUATION COMMITTEE, OPERATING ENGINEERS LOCAL 3 TRUST FUND, OPERATIVE PLASTERERS AND CEMENT MASONS INTERNATIONAL ASSOCIATION LOCAL 262 ANNUITY FUND, Individually and on behalf of all others similarly situated, POLICE AND FIRE RETIREMENT SYSTEM OF THE CITY OF DETROIT, TEAMSTERS ALLIED BENEFIT FUNDS, THE CITY OF EDINBURGH COUNCIL AS ADMINISTERING AUTHORITY OF THE LOTHIAN PENSION FUND, THE PENSION FUND GROUP, BROCKTON CONTRIBUTORY RETIREMENT SYSTEM, RICK FLEISCHMAN, STEPHEN GOTT, ISLAND MEDICAL GROUP, KARIM KANO, MICHAEL KARFUNKEL, ANN LEE, FRANCISCO PEREZ, RONALD PROFILI, SHEA-EDWARDS LIMITED PARTNERSHIP, FRED TELLING, GRACE WANG, ZAHNISER TRUST, ANTHONY PEYSER, On behalf of himself and all others similarly situated, STEPHEN P. GOTT, On behalf of himself, All others similarly situated, BELMONT HOLDINGS CORP., individually and on behalf of all others similarly situated, KATHY ROONEY, on behalf of themselves and all others similarly situated, JEFFREY STARK, on behalf of themselves and all others similarly situated, STANLEY TOLIN, ENRIQUE AZPIAZU, STUART BREGMAN, ROBERTA CIACCI, ROBERT FEINERMAN,

IRWIN INGWER, PHYLLIS INGWER, ISLAND MEDICAL GROUP PENSION PLAN, f/b/o Irwin Ingwer, FRANKLIN KASS, CHRISTOPHER LEWIS, on behalf of himself and The Entertainment Group, AURORA PEREZ, CUAUHTEMOC PEREZ, DIANA PEREZ, TRUSTEE J. HARRY PICKLE, GASTROENTEROLOGY ASSOCIATES PROFIT SHARING TRUST FBO CHARLES M. BROOKS M.D., ALEJANDRO SILVA, DAVID SOSNA, MORTGAGE TRUST 2007-6, ALASKA ELECTRICAL PENSION FUND, On behalf of itself and all others similarly situated, FOUNDATION PROPERTY MANAGEMENT, INC., RHF FOUNDATION INC., RETIREMENT HOUSING FOUNDATION, COUNTY OF ALAMEDA, BERNICE KAUFMAN, as trustee of the Irene Kaufman Trust, IRENE KAUFMAN, as trustee of the Irene Kaufman Trust, ARTHER N. ABBEY, FIFTH-NINTH STREET INVESTORS LLC, ADINA SCHRON, JTWROS, AVI SCHRON, JOSEPH P. DANIS, RENA CALDWELL, on behalf of themselves and all others similarly situated, GLEN DEATHROW, on behalf of himself and all others similarly situated, MADELINE DIMODICA, on behalf of herself and all other similarly situated, BARBARA KATTELL, on behalf of himself and all other similarly situated, CECIL MEASE, on behalf of themselves and all others similarly situated, HENRY NAPIRALA, LINDA NAPIRALA, MICHAEL SHIPLEY, on behalf of themselves and all others similarly situated,

*Plaintiffs,*

-v.-

LEHMAN BROTHERS HOLDINGS INC., RICHARD S. FULD, JR., MACOMBER, ERIN M. CALLAN, WENDY M. UVINO, THE EMPLOYEE BENEFIT PLANS COMMITTEE, JOHN DOE, 1-10, MARY PAT ARCHER, AMITABH ARORA, MICHAEL BRANCA, EVELYNE ESTEY, ADAM FEINSTEIN, DAVID ROMHILT,

*Defendants-Appellees,*

LEHMAN BROTHERS HOLDINGS INC., EMPLOYEE BENEFIT PLANS COMMITTEE, BOARD OF DIRECTORS LEHMAN BROTHERS HOLDINGS, INC., BENEFITS COMMITTEE, MOODY'S INVESTORS SERVICE, INC., MCGRAW-HILL COMPANIES, INC., MOODY'S CORPORATION, ERNST & YOUNG, LLP, BRIAN M. CLARKSON, MICHAEL KANEF, MOODY'S INVESTORS SERVICE, INC., FIDELITY MANAGEMENT TRUST COMPANY, ANZ SECURITIES, INC., CITIGROUP GLOBAL MARKETS INC., RBC CAPITAL MARKETS CORPORATION, ABN AMRO INCORPORATED, WILLIAMS CAPITAL GROUP L.P., BBVA SECURITIES INC., GREENWICH CAPITAL MARKETS, INC., SUNTRUST CAPITAL MARKETS, INC., CIBC WORLD MARKETS CORP., HSBC SECURITIES (USA) INC., HVB CAPITAL MARKETS, INC., M.R. BEAL & COMPANY, BNP PARIBAS S.A., ING FINANCIAL MARKETS LLC, MELLON FINANCIAL MARKETS, LLC, NATIXIS BLEICHROEDER INCORPORATED, SANTANDER INVESTMENT SECURITIES INC., SG AMERICAS

SECURITIES HOLDINGS, LLC, WELLS FARGO SECURITIES, LLC, NATIONAL AUSTRALIA CAPITAL MARKETS, LLC, CAJA DE AHORROS Y MONTE DE PIEDAD DE MADRID, HARRIS NESBITT CORP., DZ FINANCIAL MARKETS LLC, FORTIS SECURITIES, LLC, RBS GREENWICH CAPITAL, BMO CAPITAL MARKETS CORP., MIZUHO SECURITIES USA, INC., MURIEL SIEBERT & CO., INC., SCOTIA CAPITAL (USA) INC., SOVEREIGN SECURITIES CORPORATION, LLC, UTENDAHL CAPITAL PARTNERS, L.P., BANK DEFENDANTS, BANKIA, S.A., RAYMOND MCDANIEL, JR., RBS WCS HOLDING COMPANY, DAIWA CAPITAL MARKETS EUROPE LIMITED, BNY CAPITAL MARKETS, INC., WACHOVIA CAPITAL MARKETS, LLC, BNY MELLON CAPITAL MARKETS, LLC, MCGRAW-HILL COMPANIES, INC., A.G. EDWARDS & SONS, INC., BANC OF AMERICA SECURITIES LLC, BBVA SECURITIES INC., COMMERZBANK CAPITAL MARKETS CORP., FIDELITY CAPITAL MARKETS, LOOP CAPITAL MARKETS, LLC, MORGAN STANLEY & CO. LLC, RAYMOND JAMES & ASSOCIATES, INC., UBS SECURITIES LLC, WACHOVIA SECURITIES, LLC, ZIONS DIRECT, INC., CALYON SECURITIES (USA) INC., COUNTRYWIDE SECURITIES CORPORATION, HYPO CAPITAL MARKETS, INC., LASALLE FINANCIAL SERVICES, INC., EDWARD D. JONES & CO., L.P., NATIONAL AUSTRALIA BANK LIMITED, RBC DAIN RAUSCHER INCORPORATED, BANK OF NEW YORK CAPITAL MARKETS, INC., CIBC WORLD MARKETS CORP., DNB NOR MARKETS INC., MERRILL LYNCH,

PIERCE, FENNER & SMITH INCORPORATED, SIEBERT CAPITAL MARKETS, STANDARD CHARTERED BANK, SUNTRUST ROBINSON HUMPHREY, INC., TD SECURITIES (USA) LLC, J.P. MORGAN SECURITIES LLC, CITIGROUP INC., RBS SECURITIES INC., HARRIS NESBITT, SOCIETE GENERALE CORPORATE & INVESTMENT BANKING, CITIGROUP GLOBAL MARKETS REALTY CORP., BBVA SECURITIES INC., BANC OF AMERICA SECURITIES LLC, CABRERA CAPITAL MARKETS, LLC, D.A. DAVIDSON & CO., DAVENPORT & COMPANY LLC, FERRIS, BAKER WATTS, INC., FIFTH THIRD SECURITIES, INC., FIXED INCOME SECURITIES, INC., H & R BLOCK FINANCIAL ADVISORS, INC., JACKSON SECURITIES LLC, JANNEY MONTGOMERY SCOTT LLC, KEEFE, BRUYETTE & WOODS, INC., KEYBANC CAPITAL MARKETS, INC., MAXIM GROUP LLC, MESIROW FINANCIAL, INC., MORGAN KEEGAN & COMPANY, INC., NATIONAL FINANCIAL SERVICES LLC, OPPENHEIMER & CO., INCORPORATED, ROBERT W. BAIRD & CO. INCORPORATED, SMH CAPITAL INC., SCOTT & STRINGFELLOW, INC., STIFEL, NICOLAUS & COMPANY, INCORPORATED, STONE & YOUNGBERG LLC, TD AMERITRADE HOLDING CORPORATION, VINING SPARKS IBG, LP, ZIONS DIRECT, INC., WACHOVIA CAPITAL FINANCE, B.C. ZIEGLER AND COMPANY, CREDIT SUISSE SECURITIES (USA) LLC, PIPER JAFFRAY & CO., DZ FINANCIAL MARKETS LLC, LANA FRANKS, EDWARD GRIEB, RICHARD MCKINNEY, KRISTINE SMITH, JAMES J. SULLIVAN,

SAMIR TABET, MARK L. ZUSY, ABN AMRO HOLDING N.V, CABRERA CAPITAL MARKETS LLC, CHARLES SCHWAB & CO., INC., NABCAPITAL SECURITIES, LLC, THE WILLIAMS CAPITAL GROUP, L.P., PIPER JAFFRAY & CO., DAVID GOLDFARB, HERBERT H. MCDADE, III, THOMAS RUSSO, MARK WALSH, JERRY GARCIA, An Individual, BNP PARIBAS, KATHLEEN FULD, JOHN C. ANDERSON, JAMES ESPOSITO, FINANCIAL ASSETS SECURITIES CORPORATION, GREENWICH CAPITAL ACCEPTANCE, INC., NOW KNOWN A RBS ACCEPTANCE INC., GREENWICH CAPITAL FINANCIAL PRODUCTS, INC., now known as RBS Financial Products Inc., GREENWICH CAPITAL MARKETS, INC., now known as RBS Securities Inc., CAROL P. MATHIS, ROBERT J. MCGINNIS, JOSEPH N. WALSH, III, BANCA IMI, S.P.A., ARKANSAS ACTIONS BANK DEFENDANTS, ARKANSAS ACTIONS INDIVIDUAL DEFENDANTS, WSIB ACTION BANK DEFENDANTS, ANICO ACTION BANK DEFENDANTS, PEARSON PLAINTIFFS' ACTIONS BANK DEFENDANTS, STATE FUND ACTION INDIVIDUAL DEFENDANTS, RHF ACTION INDIVIDUAL DEFENDANTS, REMER ACTION INDIVIDUAL DEFENDANTS, A/S ACTIONS INDIVIDUAL DEFENDANTS, THE LEHMAN BROTHERS SAVINGS PLAN, ERIN CALLAN, JOSEPH M. GREGORY, IAN LOWITT, MIZUHO SECURITIES USA, INC., UBS FINANCIAL SERVICES INC., CHRISTOPHER M. O'MEARA, MICHAEL L. AINSLIE, JOHN F. AKERS, ROGER S. BERLIND, THOMAS H. CRUIKSHANK, MARSHA JOHNSON EVANS, SIR CHRISTOPHER GENT,

JERRY A. GRUNDHOFER, RONALD A. HERNANDEZ, HENRY KAUFMAN AND JOHN D. MACOMBER,

*Defendants,*

BNC MORTGAGE LOAN TRUST 2006-1, BNC MORTGAGE LOAN TRUST 2006-2, FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF12, FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FF2, FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FFA, FIRST FRANKLIN MORTGAGE LOAN TRUST 2006-FFB, GREENPOINT MORTGAGE FUNDING TRUST SERIES 2006-AR4, GREENPOINT MORTGAGE FUNDING TRUST SERIES 2006-AR5, GREENPOINT MORTGAGE FUNDING TRUST SERIES 2006-AR7, GREENPOINT MORTGAGE FUNDING TRUST SERIES 2006-HE1, GREENPOINT MORTGAGE FUNDING TRUST SERIES 2006-AR6, GREENPOINT MORTGAGE FUNDING TRUST SERIES 2006-AR8, GREENPOINT MORTGAGE FUNDING TRUST, SERIES 2007-AR1, GREENPOINT MORTGAGE FUNDING TRUST, SERIES 2007-AR3, LEHMAN MORTGAGE TRUST 2006-2, LEHMAN MORTGAGE TRUST 2006-5, LEHMAN MORTGAGE TRUST 2006-6, LEHMAN MORTGAGE TRUST 2006-7, LEHMAN MORTGAGE TRUST 2006-8, LEHMAN MORTGAGE TRUST 2006-9, LEHMAN MORTGAGE TRUST 2007-1, LEHMAN MORTGAGE TRUST 2007-2, LEHMAN MORTGAGE TRUST 2007-3, LEHMAN MORTGAGE TRUST 2007-4, LEHMAN MORTGAGE TRUST 2007-5, LEHMAN XS TRUST 2005-4, LEHMAN XS TRUST 2005-5N, LEHMAN XS TRUST 2005-

6, LEHMAN XS TRUST 2005-7N, LEHMAN XS TRUST 2005-8, LEHMAN XS TRUST 2005-9N, LEHMAN XS TRUST 2006-1, LEHMAN XS TRUST 2006-11, LEHMAN XS TRUST 2006-13, LEHMAN XS TRUST 2006-14N, LEHMAN XS TRUST 2006-15, LEHMAN XS TRUST 2006-16N, LEHMAN XS TRUST 2006-17, LEHMAN XS TRUST 2006-18N, LEHMAN XS TRUST 2006-19, LEHMAN XS TRUST 2006-20, LEHMAN XS TRUST 2006-2N, LEHMAN XS TRUST 2006-3, LEHMAN XS TRUST 2006-4N, LEHMAN XS TRUST 2006-5, LEHMAN XS TRUST 2006-GP1, LEHMAN XS TRUST 2006-GP2, LEHMAN XS TRUST 2007-1, LEHMAN XS TRUST 2007-10H, LEHMAN XS TRUST 2007-11, LEHMAN XS TRUST 2007-12N, LEHMAN XS TRUST 2007-2N, LEHMAN XS TRUST 2007-4N, LEHMAN XS TRUST 2007-5H, LEHMAN XS TRUST 2007-6, LEHMAN XS TRUST 2007-7N, LEHMAN XS TRUST 2007-9, LEHMAN XS TRUST SERIES 2005-5N, LEHMAN XS TRUST SERIES 2005-7N, LEHMAN XS TRUST SERIES 2005-9N, LEHMAN XS TRUST SERIES 2006-16N, LEHMAN XS TRUST SERIES 2006-2N, STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST 2006-10, STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST 2006-11, STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST 2006-12, STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST 2006-2, STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST 2006-3, STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST 2006-4, STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST 2006-8, STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN

TRUST 2006-9, STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST 2007-1, STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST 2007-2, STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST 2007-3, STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST 2007-4, STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST 2007-5, STRUCTURED ADJUSTABLE RATE MORTGAGE LOAN TRUST 2007-6, STRUCTURED ASSET INVESTMENT LOAN TRUST 2006-2, STRUCTURED ASSET INVESTMENT LOAN TRUST 2006-BNC1, STRUCTURED ASSET INVESTMENT LOAN TRUST 2006-BNC3, STRUCTURED ASSET SECURITIES CORPORATION, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2006-BC1, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2006-BC2, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2006-BC3, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2006-BC4, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2006-BC5, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2006-BC6, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2006-S1, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2006-S3, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2006-S4, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2006-WF1, STRUCTURED

ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2006-WF3, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2007-BC1, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2007-BC2, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2007-BC3, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2007-EQ1, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2007-OSI, STRUCTURED ASSET SECURITIES CORPORATION MORTGAGE LOAN TRUST 2007-WF1, DOES 1-20, GREENPOINT MORTGAGE FUNDING GRANTOR TRUST 1-A1A, SERIES 2006-AR6, GREENPOINT MORTGAGE FUNDING GRANTOR TRUST 1-A2A2, SERIES 2006-AR5, GREENPOINT MORTGAGE FUNDING GRANTOR TRUST 1-A3A2, SERIES 2006-AR5, GREENPOINT MORTGAGE FUNDING TRUST 1-A2A2, SERIES 2006-AR6, GREENPOINT MORTGAGE FUNDING TRUST 1-A2B, SERIES 2006-AR6, GREENPOINT MORTGAGE FUNDING TRUST 1-A3B, SERIES 2006-AR6, GREENPOINT MORTGAGE FUNDING TRUST 1-A3B, SERIES 2006-AR6, LEHMAN BROTHERS INC., LEHMAN MORTGAGE TRUST 2007-6, LEHMAN MORTGAGE TRUST MORTGAGE PASS-THROUGH CERTIFICATES, SERIES 2007-4,

*Consolidated-Defendants.*

_____

Before:

JACOBS, WESLEY, and LIVINGSTON, *Circuit Judges*.

---

Plaintiffs-Appellants appeal from the July 10, 2015 dismissal of their third consolidated amended complaint in the United States District Court for the Southern District of New York (Kaplan, *Judge*) alleging breach of duties by Defendants-Appellees, who were fiduciaries of an employee stock ownership plan ("ESOP") invested exclusively in the common stock of Lehman Brothers Holdings, Inc. ("Lehman"). Plaintiffs-Appellants, all of whom participated in this plan and suffered severe financial losses after Lehman declared bankruptcy in September 2008, claimed that Defendants-Appellees breached their duty of prudence under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, by continuing to permit investment in Lehman stock throughout the months leading up to its bankruptcy. The District Court granted Defendants-Appellees' motion to dismiss pursuant to Federal Rule of Civil Procedure 12(b)(6), finding that even without applying the presumption of prudence rejected by the Supreme Court in *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014), Plaintiffs-Appellants failed to plead plausibly that Defendants-Appellees breached their ERISA duties. We AFFIRM the judgment of the District Court.

---

DANIEL W. KRASNER (Matthew M. Guiney, Wolf Haldenstein Adler Freeman & Herz LLP, New York, NY; Thomas J. McKenna, Gregory Egleston,

Gainey McKenna & Egleston, New York, NY, *on the brief*), Wolf Haldenstein Adler Freeman & Herz LLP, New York, NY, *for Plaintiffs-Appellants Alex E. Rinehart, on behalf of himself and all others similarly situated, Jo Anne Buzzo, Monique Miller Fong, on behalf of herself and others similarly situated, Maria DeSousa, and Linda DeMizio.*

JONATHAN K. YOUNGWOOD (Janet Gochman, Alexander Li, *on the brief*), Simpson Thacher & Bartlett LLP, New York, NY, *for Defendants-Appellees Mary Pat Archer, Amitabh Arora, Michael Branca, Evelyne Estey, Adam Feinstein, David Romhilt, and Wendy M. Uvino.*

TODD S. FISHMAN, Allen & Overy LLP, New York, NY, *for Defendant-Appellee Richard S. Fuld, Jr.*

—————

PER CURIAM:

This case returns to the Court for the second time since 2013. After the September 2008 bankruptcy of Lehman Brothers Holdings, Inc. ("Lehman"), Plaintiffs-Appellants ("Plaintiffs") brought suit on behalf of a putative class of former participants in an employee stock ownership plan ("ESOP") invested exclusively in Lehman's common stock. Plaintiffs alleged that Defendants-Appellees ("Plan Committee Defendants" or "Benefit Committee Defendants"), who were fiduciaries of this ESOP, breached their duty of prudence under the Employee Retirement Income Security Act of 1974 ("ERISA"), 29 U.S.C. §§ 1001 *et seq.*, by continuing to permit investment in Lehman stock in the face of circumstances arguably foreshadowing its

2

eventual demise. Plaintiffs also alleged that Lehman's former directors, including Lehman's former chairman and chief executive officer, Defendant-Appellee Richard S. Fuld ("Defendant Fuld"), violated ERISA by failing to keep the Plan Committee Defendants apprised of material, nonpublic information that could have affected their evaluation of the prudence of investing in Lehman stock.[1]

Applying the presumption of prudence articulated in *Moench v. Robertson*, 62 F.3d 553 (3d Cir. 1995), and adopted by this Court in *In re Citigroup ERISA Litigation*, 662 F.3d 128 (2d Cir. 2011), the United States District Court for the Southern District of New York (Kaplan, *Judge*) dismissed Plaintiffs' consolidated amended complaint ("CAC") and second consolidated amended complaint ("SCAC") for failure to state a claim under Federal Rule of Civil Procedure 12(b)(6). On July 15, 2013, we affirmed the District Court's dismissal of both the CAC and SCAC while also applying the *Moench* presumption, concluding that Plaintiffs had failed to "plausibly allege[] that the Benefit Committee Defendants knew or should have known that Lehman was an imprudent investment given the mixed signals with which the fiduciaries grappled." *Rinehart v. Akers*, 722 F.3d 137, 151 (2d Cir. 2013).

Nearly a year later, on June 25, 2014, the Supreme Court of the United States held in *Fifth Third Bancorp v. Dudenhoeffer* that ESOP fiduciaries are not entitled to any special presumption of prudence. 134 S. Ct. 2459, 2463 (2014). On July 1, 2014, the Supreme Court granted Plaintiffs' petition for a writ of certiorari,

---

[1] Our previous decision in this case provides a detailed recitation of the facts, which have never been in dispute. *See Rinehart v. Akers*, 722 F.3d 137 (2d Cir. 2013), *vacated and remanded*, 134 S. Ct. 2900 (2014).

vacated the judgment in *Rinehart*, and remanded the case to our Court for further consideration in light of *Fifth Third*. *Rinehart v. Akers*, 134 S. Ct. 2900 (2014). We, in turn, remanded the case to the District Court, and the District Court allowed Plaintiffs to replace the SCAC with a third consolidated amended complaint ("TCAC") that narrowed their claims and shortened the class period.

On July 10, 2015, the District Court dismissed the TCAC, again holding that Plaintiffs had failed to state a claim under Rule 12(b)(6). *In re Lehman Bros. Sec. & ERISA Litig.*, 113 F. Supp. 3d 745, 769 (S.D.N.Y. 2015). Though recognizing that *Fifth Third* abrogated the *Moench* presumption of prudence formerly governing ESOP-based ERISA claims in this Circuit, the District Court nonetheless concluded that Plaintiffs failed to allege sufficiently that the Plan Committee Defendants violated their ERISA fiduciary duties as measured by the *Twombly* and *Iqbal* pleading standards. *Id.* at 754–55.

We affirm.

## DISCUSSION[2]

The central purpose of ERISA is "to protect beneficiaries of employee benefit plans." *Slupinski v. First Unum Life Ins. Co.*, 554 F.3d 38, 47 (2d Cir. 2009). To further this purpose, ERISA imposes on fiduciaries a duty to "act in a prudent manner 'under the circumstances then prevailing.'" *Pension Benefit Guar. Corp. ex*

---

[2] We review *de novo* a district court's dismissal for failure to state a claim under Rule 12(b)(6). *Wurtz v. Rawlings Co.*, 761 F.3d 232, 237 (2d Cir. 2014). "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

4

*rel. St. Vincent Catholic Med. Ctrs. Ret. Plan v. Morgan Stanley Inv. Mgmt. Inc.*, 712 F.3d 705, 716 (2d Cir. 2013) (quoting 29 U.S.C. § 1104(a)(1)(B)). We have long measured this duty "according to the objective prudent person standard developed in the common law of trusts," *Katsaros v. Cody*, 744 F.2d 270, 279 (2d Cir. 1984) (internal quotation marks omitted), and have emphasized that ERISA's "fiduciary duty of care . . . requires prudence, not prescience," *Pension Benefit Guar. Corp.*, 712 F.3d at 716 (alteration in original) (internal quotation marks omitted).

In *Fifth Third*, the Supreme Court rejected the presumption that we previously applied when analyzing the prudence of an ESOP fiduciary's decision to buy or hold an employer's stock. 134 S. Ct. at 2463. Prior to *Fifth Third*, we held that "an ESOP fiduciary who invests the [ESOP's] assets in employer stock is entitled to a presumption that it acted consistently with ERISA" in doing so. *Moench v. Robertson*, 62 F.3d 553, 571 (3d Cir. 1995); *see also In re Citigroup ERISA Litig.*, 662 F.3d 128, 138 (2d Cir. 2011) (adopting the *Moench* presumption in the Second Circuit because "it provides the best accommodation between the competing ERISA values of protecting retirement assets and encouraging investment in employer stock"). *Fifth Third*, however, held unequivocally that "the law does not create a special presumption favoring ESOP fiduciaries." *Fifth Third*, 134 S. Ct. at 2467. Instead, "the same standard of prudence applies to all ERISA fiduciaries, including ESOP fiduciaries, except that an ESOP fiduciary is under no duty to diversify the ESOP's holdings." *Id.*

Despite rejecting any special presumption of prudence for ESOP fiduciaries, *Fifth Third* made clear that "where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a

5

general rule, at least in the absence of special circumstances." *Id.* at 2471. The Court emphasized that ERISA fiduciaries, who "could reasonably see 'little hope of outperforming the market . . . based solely on their analysis of publicly available information' may, as a general matter, . . . prudently rely on the market price." *Id.* (first alteration in original) (quoting *Halliburton Co. v. Erica P. John Fund, Inc.*, 134 S. Ct. 2398, 2411 (2014)). The Court specifically declined to consider "whether a plaintiff could nonetheless plausibly allege imprudence on the basis of publicly available information by pointing to a special circumstance affecting the reliability of the market price as 'an unbiased assessment of the security's value in light of all public information' that would make reliance on the market's valuation imprudent." *Id.* at 2472 (quoting *Halliburton*, 134 S. Ct. at 2411).

For claims alleging breach of the duty of prudence on the basis of nonpublic information, *Fifth Third* held that "a plaintiff must plausibly allege an alternative action that the defendant could have taken that would have been consistent with the securities laws and that a prudent fiduciary in the same circumstances would not have viewed as more likely to harm the fund than to help it." *Id.* The Court identified three considerations pertinent to this analysis:

> [1] [C]ourts must bear in mind that the duty of prudence, under ERISA as under the common law of trusts, does not require a fiduciary to break the law. . . .
>
> [2] [C]ourts should consider the extent to which an ERISA-based obligation either to refrain on the basis of inside information from making a planned trade or to disclose inside information to the public could conflict with the complex insider trading

and corporate disclosure requirements imposed by the federal securities laws or with the objectives of those laws. . . .

[3] [C]ourts . . . should also consider whether the complaint has plausibly alleged that a prudent fiduciary in the defendant's position could not have concluded that stopping purchases—which the market might take as a sign that insider fiduciaries viewed the employer's stock as a bad investment—or publicly disclosing negative information would do more harm than good to the fund by causing a drop in the stock price and a concomitant drop in the value of the stock already held by the fund.

*Id.* at 2472–73.

It did not take long for a post-*Fifth Third* case to reach the High Court. *Harris v. Amgen, Inc.* was a class action brought by participants in an employee benefit plan alleging breaches of fiduciary duties under ERISA when the trustees of the Plan allowed continued investment in the employer's stock despite allegedly knowing that its price was artificially inflated as a result of improper off-label drug marketing and sales. 788 F.3d 916 (9th Cir. 2015), *rev'd*, 136 S. Ct. 758 (2016) (per curiam). On remand from the Supreme Court, the Ninth Circuit reasoned that the plaintiffs' complaint adequately alleged claims under *Fifth Third* because, in light of the fact that "the federal securities laws require disclosure of material information," it is "quite plausible . . . that defendants could remove the [Amgen Common Stock Fund] from the list of investment options without causing undue harm to plan participants." *Id.* at 937–38.

7

The Supreme Court accepted the possibility that "removing the Amgen Common Stock Fund from the list of investment options" might be "an alternative action that could plausibly have satisfied *Fifth Third*'s standards." *Amgen Inc.*, 136 S. Ct. at 760. Nevertheless, the Court reversed the Ninth Circuit because plaintiffs failed to plead "facts and allegations supporting that proposition." *Id.* Though it faulted the Ninth Circuit for "fail[ing] to assess whether the complaint in its current form 'has plausibly alleged' that a prudent fiduciary in the same position 'could not have concluded' that the alternative action 'would do more harm than good,'" the Court concluded ultimately that "the stockholders are the masters of their complaint" and the complaint did not contain "sufficient facts and allegations to state a claim for breach of the duty of prudence." *Id.* (quoting *Fifth Third*, 134 S. Ct. at 2473).

Plaintiffs here allege in Count I of the TCAC that the Plan Committee Defendants knew or should have known, based on publicly available information, that investment in Lehman had become increasingly risky throughout 2008, and that failing to consider the wisdom of continuing to invest in Lehman during this period constituted a breach of fiduciary duty. *See* J.A. 684–88 (TCAC ¶¶ 412–26). The District Court found—and we agree—that neither *Fifth Third* nor the substitution of one amended complaint for another changes our previous conclusion that Plaintiffs have failed to plausibly allege a breach of duty claim. As the District Court observed, the TCAC's updated descriptions of "allegedly ominous news articles, volatility of Lehman's stock price, increased trading volumes, rising costs of Lehman credit default swaps and other investment instruments, downgrades from various ratings agencies, and criticism from investment analysts . . . do no more than add marginally to the cacophony of 'mixed signals' described in the SCAC." *In re Lehman Bros. Sec. &*

*ERISA Litig.*, 113 F. Supp. 3d at 755 (quoting *Rinehart*, 722 F.3d at 151). These additions and refinements "do not nudge the allegations of the TCAC across the plausibility threshold." *Id.*

Plaintiffs attempt to plead around *Fifth Third* by saying that their claims concern "excessive risk" and therefore are not covered by *Fifth Third*, which Plaintiffs argue dealt only with claims concerning "market value."[3] For purposes of this analysis, we agree with the District Court that the purported distinction between claims involving "excessive risk" and claims involving "market value" is illusory. *Fifth Third* "foreclose[s] breach of prudence claims based on public information *irrespective of whether such claims are characterized as based on alleged overvaluation or alleged riskiness* of a stock." *In re Lehman Bros.*, 113 F. Supp. 3d at 756 (emphasis added). Although the language of *Fifth Third* refers primarily to "over- or undervaluing" stock, the *Fifth Third* Court applied this rule to the plaintiffs' risk-based claims in that case. *See* 134 S. Ct. at 2471–72. Moreover, viewing this rule as applicable to *all* allegations of imprudence based upon public information—regardless of whether the allegations are framed in

---

[3] *See* Appellants' Br. 39 ("[T]he gravamen of Count I is *not* that the market was overvaluing the price of Lehman Stock, but that the Benefit Committee Defendants failed to investigate whether Lehman Stock remained a prudent retirement investment for the Plan in light of the escalating risks surrounding Lehman."); Appellants' Br. 40 ("[N]o court has ever held that a security's *price* is the sole benchmark by which a fiduciary should be guided, and that plan fiduciaries are entitled to ignore adverse changed circumstances pertaining to a plan investment simply because the investment is priced accurately."). As support for this argument, Plaintiffs rely in part on *Gedek v. Perez*, 66 F. Supp. 3d 368 (W.D.N.Y. 2014), and *Tibble v. Edison Intern.*, 135 S. Ct. 1823 (2015). For the reasons stated by the District Court, we agree that Plaintiffs' reliance on these cases is misplaced.

terms of market value or excessive risk—is consistent with the efficient market hypothesis that risk is accounted for in the market price of a security. *See id.*; *see also Halliburton Co.*, 134 S. Ct. at 2411("[I]t is reasonable to presume that *most* investors . . . will rely on the security's market price as an unbiased assessment of the security's value in light of all public information." (internal quotation marks omitted)).

Plaintiffs, picking up on the language of *Fifth Third*, assert that "special circumstances affect[ed] the reliability of the market price as an unbiased assessment of [Lehman's] value." J.A. 688 (TCAC ¶ 429). *See Fifth Third*, 134 S. Ct. at 2472 ("We do not here consider whether a plaintiff could . . . plausibly allege imprudence on the basis of publicly available information by pointing to a special circumstance affecting the reliability of the market price as 'an unbiased assessment of the security's value in light of all public information, that would make reliance on the market's valuation imprudent.'"). As support for their claim that "the market for Lehman stock faced unusual and extraordinary circumstances," J.A. 659 (TCAC ¶ 315) (internal quotation marks omitted), Plaintiffs point to orders issued by the Securities and Exchange Commission ("SEC") in July 2008 prohibiting the short-selling of securities of certain financial services firms, including Lehman.  Plaintiffs allege in Count II that: (1) these SEC orders describe market conditions constituting "special circumstances;" and (2) the orders themselves created special circumstances by excluding naked short sales of certain securities, including Lehman.

Under their first theory, Plaintiffs claim that the Plan Committee Defendants "imprudently relied on the market's valuation of [Lehman] Stock during the Class Period," J.A. 659 (TCAC ¶ 318), because the SEC's orders warned, among other things, that "there now exists a substantial threat of sudden and

excessive fluctuations of securities prices generally and disruption in the functioning of the securities markets that could threaten fair and orderly markets." U.S. Sec. & Exchange Comm'n, *Emergency Order Pursuant to Section 12(k)(2) of the Securities Exchange Act of 1934 Taking Temporary Action to Respond to Market Developments* at 2, Release No. 58166 (July 15, 2008), *available at* http://www.sec.gov/rules/other/2008/34-58166.pdf (hereinafter "July 15 Order"). But the SEC orders speak only conditionally about potential market effects resulting from so-called naked short sales;[4] they do not purport to describe then-existing market conditions. Moreover, as the District Court observed, "the only plausible inference supported by the TCAC is that the market processed any risks identified in the SEC's orders as it would have processed any other public information about Lehman." *In re Lehman Bros.*, 113 F. Supp. 3d 745, 759 (S.D.N.Y. 2015). Plaintiffs therefore cannot establish "special circumstances" under this first theory.

As to their second theory, Plaintiffs' conclusory assertions do not give rise to a plausible inference that the SEC orders "affect[ed] the reliability of the market price as 'an unbiased assessment of [Lehman's] value in light of all public information.'" *Fifth Third*, 134 S. Ct. at 2472. The TCAC parrots language from *Fifth Third*, but "we are not bound to accept as true a legal conclusion couched as a factual allegation." *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009). Given this defective pleading,

---

[4] "In a 'naked' short sale, the seller does not borrow or arrange to borrow the securities in time to make delivery to the buyer within the standard three-day settlement period. As a result, the seller fails to deliver securities to the buyer when delivery is due." "Naked Short Sales," *Investor Information*, U.S. SEC. & EXCHANGE COMM'N, SEC, http://www.sec.gov/answers/nakedshortsale.htm (last modified April 13, 2015).

we need not decide whether the July 2008 SEC orders constitute "special circumstances" within the meaning of *Fifth Third*.

The final two counts of the TCAC are alleged in the alternative. Count III alleges that the Plan Committee Defendants breached their fiduciary duties by failing to investigate nonpublic information regarding the risks of Lehman. *See* J.A. 689–94 (TCAC ¶¶ 433–47). Plaintiffs claim that had the Plan Committee Defendants honored their fiduciary obligation to conduct "an appropriate independent investigation" into the riskiness of Lehman stock during the class period, they would have uncovered nonpublic information revealing the imprudence of continuing to invest in that stock. J.A. 690–91 (TCAC ¶ 436). Count IV alleges that Defendant Fuld inadequately monitored the Plan Committee Defendants and breached his fiduciary duty by failing to share with those Defendants nonpublic information he possessed regarding the risks facing Lehman. *See* J.A. 694–97 (TCAC ¶ 448–59).

We agree with the District Court that Count III fails because "the TCAC nowhere explains in a non-conclusory fashion *how* plaintiffs' hypothetical investigation would have uncovered the alleged inside information." *In re Lehman Bros.*, 113 F. Supp. 3d at 762. Even without the *Moench* presumption rejected by *Fifth Third*, it remains our standard that, to plead plausibly a breach of the duty of prudence for failure to investigate, "plaintiffs must allege facts that, if proved, would show that an 'adequate investigation would have revealed to a reasonable fiduciary that the investment at issue was improvident.'" *In re Citigroup ERISA Litig.*, 662 F.3d at 141 (quoting *Kuper v. Iovenko*, 66 F.3d 1447, 1460 (6th Cir. 1995)). The TCAC in this case includes "no specific allegations about what lines of inquiry would have revealed this information or who, if

pressed, in fact would have disclosed it to the Plan Committee Defendants." *In re Lehman Bros.*, 113 F. Supp. 3d at 762.

Moreover, as the District Court recognized, *see Lehman*, 113 F. Supp. 3d, at 763, the TCAC does not plausibly plead facts and allegations showing that a prudent fiduciary during the class period "would not have viewed [disclosure of material nonpublic information regarding Lehman or ceasing to buy Lehman stock] as more likely to harm the fund than to help it." *Amgen,* 136 S. Ct. at 759 (2016) (quoting *Fifth Third*, 134 S. Ct. at 2472). *Amgen* reinforces this conclusion. A prudent fiduciary could have concluded that divesting Lehman stock, or simply holding it without purchasing more, "'would do more harm than good.'" *Amgen*, 136 S. Ct. at 760 (quoting *Fifth Third*, 134 S. Ct. at 2473). Such an alternative action in the summer of 2008 could have had dire consequences. Like the Plaintiffs in *Amgen*, Plaintiffs here simply have not met the *Fifth Third* standard for making out "sufficient facts and allegations to state a claim for breach of the duty of prudence." *Id.*

With regard to Defendant Fuld, the District Court correctly observed that nothing in *Fifth Third* changes our previous analysis dismissing Plaintiffs' duty to monitor and duty to inform claims. As we held previously, "Plaintiffs cannot maintain a claim for breach of the duty to monitor . . . absent an underlying breach of the duties imposed under ERISA" by the Plan Committee Defendants. *Rinehart*, 722 F.3d at 154. Further, the District Court correctly concluded that "ERISA does not impose a duty on appointing fiduciaries to keep their appointees apprised of nonpublic information." *In re Lehman Bros.*, 113 F. Supp. 3d at 765. Though this Court has not yet squarely addressed the issue, nothing in *Fifth Third* gives us reason to alter our previous view that, "even if we determined that Plaintiffs adequately alleged that the [Plan] Committee

Defendants had violated their duty of prudence, we would be unlikely to conclude that the Director Defendants [including Defendant Fuld] had a duty to keep the plan managers apprised of material, nonpublic information regarding the soundness of Lehman as an investment." *Rinehart*, 722 F.3d at 154.

## CONCLUSION

We agree with the District Court that, even without the presumption of prudence rejected in *Fifth Third*, Plaintiffs have failed to plead plausibly that the Plan Committee Defendants breached their fiduciary duties under ERISA by failing to recognize the imminence of Lehman's collapse. We conclude now, as before, that Plaintiffs have not adequately shown that the Plan Committee Defendants should be held liable for their actions in attempting to meet their fiduciary duties under ERISA while simultaneously offering an undiversified investment option for employees' retirement savings. Accordingly, we AFFIRM the judgment of the District Court.