ROGERS, Circuit Judge,
concurring in the judgment.
The Employee Retirement Income Security Act (“ERISA”), 29 U.S.C. § 1001 et seq., was designed “to protect ... the interests of participants in employee benefit plans and their beneficiaries.” Id. § 1001(b). Congress’ “massive undertaking,” Pilot Life Ins. Co. v. Dedeaux, 481 U.S. 41, 44, 107 S.Ct. 1549, 95 L.Ed.2d 89 (1987), followed “almost a decade of studying the Nation’s private pension plans,” and resulted in a complex and comprehensive statute, Nachman Corp. v. Pension Benefit Guar. Corp., 446 U.S. 359, 361, 100 S.Ct. 1723, 64 L.Ed.2d 354 (1980), under which every employee benefit plan is to be managed by fiduciaries subject to common law duties of care and specific duties set forth in ERISA, 29 U.S.C. §§ 1102(a), 1104(a)(1). ERISA fiduciaries ordinarily have a duty to diversify investments in retirement plans “so as to minimize the risk of large losses.” Id. § 1104(a)(1)(C). But employee stock ownership plans (“ESOP”) are different. Such plans, which invest “primarily” in the stock of the employer’s company, id. § 1107(d)(6)(A), are exempt from the - diversification requirement, id. § 1104(a)(2), and serve multiple purposes, generally to protect employees’ retirement savings and also to provide capital growth funds, see Tax Reform Act of 1976, § 803(h), 90 Stat. 1590. Despite the risk of undiversified retirement investments acknowledged in ERISA, see 29 U.S.C. § 1104(a)(1)(C), Congress has cori-tinued to use tax incentives to encourage the creation of ESOPs, Fifth Third Bancorp v. Dudenhoeffer, — U.S. —, 134 5.Ct. 2459, 2469, 189 L.Ed.2d 457 (2014). Coburn’s purported class action complaint, on behalf of herself as a J.C. Penney ESOP participant and other current and former employees who participated in the J.C. Penney ESOP, alleged that Ever-core Trust Company, N.A. (“Evercore”), the J.C. Penney ESOP fiduciary, violated its duty of prudence by failing “to evaluate the merits of the [ESOP’s] investments on an ongoing basis and take all necessary steps to ensure that the [ESOP’s] assets were invested prudently.” Compl. ¶ 67 (Jan. 13, 2015). According to the complaint, given the results of new management initiatives beginning in 2012, Evercore “knew or should have known that [J.C. Penney] stock was not a suitable and appropriate investment for the [ESOP], but was, instead, a highly speculative and risky investment in light of [J.C. Penne/s] serious mismanagement and precarious financial condition.” Id. ¶ 69. Further, it alleged that a loyal and prudent fiduciary would “have in place a regular, systemic procedure for evaluating the prudence of investment in [J.C. Penney] stock.” Id. ¶ 70. *974 More particularly, the complaint. alleged that Evercore should have ceased “to offer [J.C. Penney] stock as an investment option for participant contributions in .the [ESOP] when [Evercore] knew that [J.C. Penney] stock no longer was a prudent investment for participants’ retirement savings,” id. ¶ 77, and it “could not possibly have acted prudently when it continued to invest the [ESOP’s] assets” in J.C. Penney stock, id. ¶ 76.
Opposing Evercore’s motion to dismiss the complaint pursuant to Federal Rule of Civil Procedure 12(b)(6), on the ground the complaint “is identical to the claim alleged” and rejected in Dudenhoeffer, Mem. in Supp. of Def. Evercore Trust Co. N.A.’s Mot. to Dismiss 6, Apr. 13, 2015 (“Def.’s Motion”), Coburn pointed to the Supreme Court’s May 18, 2015 decision in Tibble v. Edison International, — U.S. —, 135 S.Ct. 1823, 191 L.Ed.2d 795 (2015). She argued not only that Tibbie “reconfirmed [Evercore’s] fiduciary obligations under trust law and ERISA,” but that Dudenhoeffer “is only relevant in cases where the stock price is alleged to have been artificially inflated,” which “is not alleged here.” Pl.’s Opp. to Def.’s Mot. to Dismiss 1, 10, June 12, 2015 (“Pl,’s Opposition”). Absent a claim that J.C. Penney stock was either overvalued or undervalued, Coburn asserted she did not need to plead special circumstances in order to survive the motion to dismiss. Id. at 10-11. In Coburn’s view, Tibble “clarified that the duty of prudence under ERISA includes a duty to continually monitor the prudence of investments of plan assets.” Id. at 9. Evercore responded that Tibble “says nothing about whether Evercore breached the duty [to monitor] by failing to foresee the future decline in the price of J.C. Penney stock.... Dudenhoeffer already resolves this issue.” Reply Mem. in Support of Def. Evercore Mot. to Dismiss 2-3, July 13, 2015.
Surprisingly, Coburn does not raise a Tibbie contention on appeal. See Op.-970 n.2; Concurring Op. 976 (Edwards, J.). Consequently, the question before this court is whether Dudenhoeffer is dispositive. The Supreme Court has confirmed that the role of ESOP fiduciaries gives rise to the “tension” between the “general duty of prudence” required of ERISA fiduciaries and the authorization of non-diversified, high-risk ESOPs. Amgen Inc. v. Harris, — U.S. —, 136 S.Ct. 758, 759, 193 L.Ed.2d 696 (2016); see also Pfeil v. State St. Bank & Trust Co., 806 F.3d 377, 382-83 (6th Cir. 2015); Rinehart v. Lehman Bros. Holdings Inc., 817 F.3d 56, 63-65 (2d Cir. 2016); Gedek v. Perez, 66 F.Supp.3d 368, 372-74 (W.D.N.Y. 2014); Concurring Op. 977 (Edwards, J.). But neither the economic theory underlying the appropriate balancing of the duties owed by ESOP fiduciaries, nor the theory of ESOPs, nor the interaction between Tibbie and Dudenhoeffer were briefed on appeal; Tibbie itself is not mentioned in the briefs. Instead, Coburn places no reliance on economic theory. Her position on appeal is that “[c]ommon law concepts of fiduciary duty ... cannot be reconciled with [Evercore’s] tortured reading which ignores Dudenhoeffer’s distinguishable facts that made market efficiency a relevant topic there, but not here.” Reply Br. 1. She accepts that Evercore was an independent plan fiduciary with no inside information about J.C. Penney’s prospects, see Appellant’s Br. 11, and focuses on common law obligations where there is a “properly functioning efficient market,” Reply Br. 2.
Consequently it behooves the court not to endorse a’ particular economic theory that could have unforeseen and even unintended consequences in future ERISA litigation, much less in a class action, where the issues are squarely presented and a court must decide them, See Op. 969-70, 971-72. The economic theories underlying *975 ERISA, and ESOPs specifically, have been the subject of much scholarship.[1] Although some theories of stock valuation and ESOP fiduciary responsibilities were addressed in the district court, see, e.g., Def.’s Motion 11-13; Pl.’s Opposition 11-13, on appeal the parties’ economic analysis is limited to general principles of market efficiency. See Appellant’s Br. 18-21; Resp’t’s Br. 11-12, 16-18. Coburn rests her appeal on Dudenhoeffer’s “extensive teaching” with respect to the common law of trusts to which she asserts ESOP fiduciaries, no less than other ERISA fiduciaries, are held, Reply Br. 2 (citing Dudenhoeffer, 134 S.Ct. at 2465, 2467, 2470), and on the district court opinion in Gedek (which was not followed by the Second Circuit Court of Appeals in Rinehart, 817 F.3d at 66 n.3). Hence, it is unnecessary for this court to weigh in on the economic theory of ESOPs, much less elaborate upon the economic theory implied by Dudenhoeffer. In this complex, technical ERISA context, I would not venture further than is necessary to decide Coburn’s appeal, and, as she has presented it, Dudenhoeffer is controlling.
The legal theory in Coburn’s complaint is based nearly verbatim on the complaint filed in Dudenhoeffer. Compare Compl. ¶¶ 67-80 with Consol. Class Action Compl. for Violations of the Emp. Ret. Income Sec. Act ¶¶ 228-240, 246-48, Dudenhoeffer v. Fifth Third Bancorp, 757 F.Supp.2d 753 (S.D. Ohio 2010) (No. 08-cv-538) (“Dudenhoeffer Compl.”). Those theories from the Dudenhoeffer complaint were argued in the employees’ brief to the Supreme Court. See Br. For Resp’ts, Fifth Third Bancorp v. Dudenhoeffer, — U.S. —, 134 S.Ct. 2459, 189 L.Ed.2d 467 (2014) (No. 12-751). The employees urged the Court to conclude, where ESOP fiduciaries “ ‘continued to allow the Plan’s investment in Fifth Third Stock even during the time that the stock price was declining in value as a result of [the] collapse of the housing market’ ... that ‘[a] prudent fiduciary facing similar circumstances would not have stood idly by as the Plan’s assets were decimated.’” Dudenhoeffer, 134 S.Ct. at 2471 (quoting Dudenhoeffer Compl. at 53).
The Supreme Court in Dudenhoeffer was thus faced with virtually identical arguments to those Coburn brings to this court. That Court rejected as “implausible” the employees’ view that, based solely on publicly available information, a fiduciary’s failure to divest from an ESOP whose stock price is declining has violated the duty of prudence, “at least in the absence of special circumstances.” Id. Coburn urges this court to conclude that Dudenhoeffer is inapplicable because her claim is not based on the over- or undervaluation of J.C. Penney stock, but rather that class members’ “risk aversion as retirement investors must also be taken into account by a fiduciary when assessing the prudence of continued investment of retirement funds over the long term.” Appellant’s Br. 14. In her view, “Evercore should have discontinued investment in J.C. Penney stock precisely because the steady decline of the Company’s stock price ‘accurately tracked the company’s steadily worsening fortunes.’” Id. at 21-22 (quoting Gedek, 66 F.Supp.3d at 375). In this context, she concludes, no “special, circumstances” needed to be pleaded. Id. at 14.
Whatever merit there might be to Co-burn’s risk-aversion contention in the absence' of Dudenhoeffer—a contention that *976 presumably would require examination of economic theory on types of information incorporated into a stock price, market efficiencies, and the extent of the duty of prudence in the context of ESOPs—Dudenhoeffer forecloses the need for such consideration here. Although the employees -in Dudenhoeffer also argued the employer’s stock was overvalued, and that fiduciaries had failed to act on the basis of non-public information, that does not undermine Dudenhoeffer’s rejection of arguments as “implausible” that are indistinguishable from those Coburn presents on appeal. 134 S.Ct. at 2471-72. And because Dudenhoeffer is dispositive, it is unnecessary to address Coburn’s challenge to the district court’s alternative holding on Gedek, much less to attempt to resolve the tension between Tibble and Dudenhoeffer or to expound on a possible economic theory of ESOPs.

. For three different analytical approaches to ERISA, see, e.g., Catherine L. Fisk, Lochner Redux: The Renaissance of Laissez-Faire Contract in the Federal Common Law of Employee Benefits, 56 Onto St. L.J, 153 (1995); Sean M. Anderson, Risky Retirement. Business: How ESOPs Harm the Workers They are Supposed to Help, 41 Loy. U; Chi. L.J. 1 (2009); Brendan S. Maher & Peter K. Strís, ERISA & Uncertainty, 88 Wash. U. L. Rev. 433 (2010).