# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

————————

No. 16-11590

————————

United States Court of Appeals
Fifth Circuit

**FILED**

June 27, 2018

Lyle W. Cayce
Clerk

RANDY KOPP, Individually and on Behalf of All Others Similarly Situated,

     Plaintiff - Appellant

v.

SCOTT W. KLEIN; DONALD B. REED; STEPHEN L. ROBERTSON; THOMAS S. ROGERS; PAUL E. WEAVER; JOHN J. MUELLER; JERRY V. ELLIOT; SAMUEL D. JONES; KATHERINE J. HARLESS; EMPLOYEE BENEFITS COMMITTEE; GEORGIA SCAIFE; WILLIAM GIST; STEVEN GABERICH; CLIFFORD WILSON; BILLY MUNDY; ANDREW COTICCHIO; HUMAN RESOURCES COMMITTEE; JOHN DOES 1-20,

     Defendants - Appellees

_____

RANDY KOPP,

     Plaintiff - Appellant

v.

SCOTT W. KLEIN; DONALD B. REED; STEPHEN L. ROBERTSON; THOMAS S. ROGERS; PAUL E. WEAVER; JOHN J. MUELLER; JERRY V. ELLIOT; SAMUEL D. JONES; KATHERINE J. HARLESS; EMPLOYEE BENEFITS COMMITTEE; GEORGIA SCAIFE;  JOHN DOES 1-20,

     Defendants - Appellees

————————————

Appeal from the United States District Court
for the Northern District of Texas

————————————

No. 16-11590

Before HIGGINBOTHAM, JONES, and GRAVES, Circuit Judges.

PER CURIAM:

Randy Kopp, a former employee of Idearc, Inc., filed this action on behalf of himself and a putative class of participants in, and beneficiaries of, Idearc's retirement benefits plan, asserting that the Defendants breached their duties of loyalty and prudence as ERISA fiduciaries "resulting in the depletion of millions of dollars of the retirement savings and anticipated retirement income of the Plan Participants."[1] The District Court dismissed Kopp's Third Amended Complaint for failure to state a claim. We affirm.

I.

Idearc was the directory operations arm of Verizon Communications, Inc. until it was spun off into a publicly-traded standalone company in November 2006. After the spinoff, Idearc offered its employees a retirement savings plan ("the Plan") governed by ERISA.[2] The Plan is a "defined contribution" or "individual account" plan, meaning that each participant has an individual account and benefits are based on the amounts allocated to each participant's account.[3] Participants could contribute to the Plan and invest their

---

[1] The Defendants in this action include eight directors and officers of Idearc; the company's Employee Benefits Committee and its members; the company's Human Resources Committee; and twenty "John Doe" defendants who had "the duty and responsibility to properly appoint, monitor[,] and inform . . . persons who exercised day-to-day responsibility for the management and administration of the Plan and its assets."

[2] Idearc originally offered three separate retirement plans—the "Management Plan," the "North Plan," and the "Mid-Atlantic Plan." The Third Amended Complaint alleges that these three plans subsequently merged into a single Management Plan ("the Plan"). We use the term "Plan" to refer to all of these plans collectively.

[3] The Plan was an Eligible Individual Account Plan ("EIAP"). Such plans "[l]ike ESOPs, . . . offer ownership in employee stock as an option to employees." *Amgen Inc. v. Harris*, 136 S. Ct. 758, 758 (2016) (per curiam).

contributions in a variety of pre-selected investment options, including Idearc stock.[4]

According to Kopp's Third Amended Complaint, Idearc experienced serious financial issues during the "Relevant Period" of November 2006 through March 2009. To start, Idearc incurred $9.115 billion of debt as a result of its spinoff from Verizon. Like most of the yellow pages industry, Idearc's revenues began to decline, and its average quarterly cash flows plummeted from $248 million in 2006 to $92 million in 2007. At the same time, Idearc found itself writing off more uncollectable debt. Between November 2006 and March 2009, the price of Idearc stock dropped precipitously. On October 24, 2008, the New York Stock Exchange notified Idearc that it was not in compliance with the exchange's continued listing criteria because "the average closing price of Idearc's common stock was less than $1.00 over a consecutive 30 trading-day period." On October 30, 2008, Idearc held a telephone conference where it acknowledged that non-payments had increased; Kopp claims this information "caused . . . Idearc's stock to drop 36%."

Kopp alleges that the company's "financial instability and onerous debt obligations were public information from the beginning of the Relevant Period." Kopp further claims that the Defendants possessed insider information—including knowledge about Idearc's relaxation of its credit policies and increase in uncollectable receivables—that showed Idearc was in financial trouble. Kopp alleges that, armed with this knowledge, certain Defendants "took affirmative measures to alter Idearc's books to reflect a lower level of bad debt receivables."

---

[4] The Plan provided for the company to make matching contributions, and such contributions were to be "credited to a participant's account in accordance with the participant's current contribution investment selections."

No. 16-11590

On November 17, 2008, Idearc's Employee Benefits Committee prohibited Plan participants from making future investments in Idearc stock. That same day, the Benefits Committee implemented an automatic liquidation of Idearc stock; however, it later agreed to cancel the scheduled liquidation. Kopp alleges that Defendants never held any meetings or conducted any discussions regarding the prudence of maintaining the Plan's investment in Idearc stock. The Benefits Committee acted through written consents in lieu of meetings. On March 31, 2009, Idearc filed for Chapter 11 bankruptcy. Idearc emerged from bankruptcy in December 2009.

In 2009 and 2010, Kopp and another Plan participant, Bruce Fulmer, filed separate actions alleging that the Defendants violated their duties of loyalty and prudence as Plan fiduciaries.[5] The district court consolidated the two cases and later dismissed the consolidated complaint for failure to state a claim.[6] The court granted the plaintiffs leave to amend and later dismissed the amended complaint with prejudice.[7] Kopp appealed, and we affirmed.[8] Kopp then filed a petition for a writ of certiorari. While that petition was pending, the Supreme Court issued its opinion *Fifth Third Bancorp v. Dudenhoeffer*.[9] The Supreme Court subsequently granted Kopp's petition, vacated this court's judgment, and remanded for further consideration in light of *Dudenhoeffer*.[10] We in turn vacated the district court's judgment and remanded for further proceedings.[11]

---

[5] Kopp is the only remaining named plaintiff in this suit.

[6] *Fulmer v. Klein*, No. 3:09–cv–2354, 2011 WL 1108661 (N.D. Tex. Mar. 16, 2011).

[7] *Fulmer v. Klein*, No. 3:09–cv–2354, 2012 WL 7634148 (N.D. Tex. Mar. 15, 2012), *vacated sub nom. Kopp v. Klein*, 762 F.3d 450, 450 (5th Cir. 2014) (per curiam).

[8] *Kopp v. Klein*, 722 F.3d 327, 330 (5th Cir. 2013), *vacated*, 134 S. Ct. 2900, 2900 (2014).

[9] *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459 (2014).

[10] *Kopp v. Klein*, 134 S. Ct. 2900 (2014).

[11] *Kopp v. Klein*, 762 F.3d 450 (5th Cir. 2014) (per curiam).

No. 16-11590

On remand, Kopp filed a second amended complaint, and the Defendants moved to dismiss for failure to state a claim. The district court granted that motion and gave Kopp leave to amend.[12] Kopp then filed the Third Amended Consolidated Complaint ("TAC"), which is the operative complaint in this appeal. As relevant here, the TAC alleges that the Defendants breached their fiduciary duties under ERISA by allowing employees to make and maintain investments in Idearc stock between November 2006 and March 2009. Defendants moved to dismiss, and the district court again granted that motion.[13] Kopp now appeals.

## II.

"We review a district court's dismissal of a plaintiff's complaint pursuant to Federal Rule of Civil Procedure 12(b)(6) de novo."[14] To avoid dismissal, a complaint must contain "sufficient factual matter, accepted as true, to 'state a claim for relief that is plausible on its face,'" meaning that "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[15] A complaint must include more than mere "labels and conclusions" or "formulaic recitation[s] of the elements of a cause of action."[16]

## III.

ERISA's primary purpose is to protect employee retirement plan participants and beneficiaries.[17] To that end, ERISA § 404 sets out distinct but interrelated duties on fiduciaries, including the duty of prudence and the duty

---

[12] *In re: Idearc Litigation*, No. 3:09-cv-2354, 2016 WL 7189980 (N.D. Tex. Feb. 26, 2016).

[13] *In re: Idearc Litigation*, No. 3:09-cv-2354, 2016 WL 7189981 (N.D. Tex. Oct. 4, 2016).

[14] *Singh v. RadioShack Corp.*, 882 F.3d 137, 144 (5th Cir. 2018).

[15] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atlantic Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[16] *Id.* (quoting *Twombly*, 550 U.S. at 555).

[17] *Pilot Life Ins. Co. v. Dedeaux*, 481 U.S. 41, 44 (1987) (citing 29 U.S.C. § 1001(b)).

No. 16-11590

of loyalty.[18] A fiduciary "who breaches any of the[se] responsibilities, obligations, or duties" becomes "personally liable" for "any losses to the plan resulting from each such breach."[19]

Kopp alleges that Defendants breached their duties of prudence and loyalty in handling the Plan's investments in company stock. First, Kopp argues that the Defendants breached their duty of prudence by allowing Plan participants to continue to invest in Idearc stock despite public information about the company's financial instability and the Defendants' allegedly fraudulent activities. Second, Kopp contends that the Defendants breached their "procedural" duty of prudence by failing "even to consider taking action in response to the long-maturing deterioration of the financial condition of Idearc." Finally, Kopp alleges that the Defendants breached their duty of loyalty by "pursu[ing] a pattern of behavior that benefitted [Idearc] and Defendants, to the detriment of employees."

A.

Under ERISA § 404, a fiduciary must act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."[20] Kopp contends that the Defendants breached this duty by allowing Plan participants to invest in Idearc stock at a time when publicly available information revealed it was not a prudent investment.

---

[18] 29 U.S.C. § 1104(a)(1)(A)-(B).

[19] 29 U.S.C. § 1109(a).

[20] 29 U.S.C. § 1104(a)(1)(B). In *Dudenhoeffer*, the Supreme Court stated that "the same standard of prudence applies to all ERISA fiduciaries including ESOP fiduciaries, except that an ESOP fiduciary is under no duty to diversify the ESOP's holdings." 134 S. Ct. at 2467.

No. 16-11590

In *Fifth Third Bancorp v. Dudenhoeffer*, the Supreme Court provided guidance for courts evaluating this type of duty-of-prudence claim based on public information.[21] It held that

> where a stock is publicly traded, allegations that a fiduciary should have recognized from publicly available information alone that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances.[22]

This rule is rooted in the "efficient market hypothesis," which assumes that the market price of a security incorporates relevant public information such that investors "have little hope of outperforming the market in the long run based solely on their analysis of publicly available information."[23] Thus, as a general rule, "a fiduciary usually 'is not imprudent to assume that a major stock market . . . provides the best estimate of the value of the stocks traded on it that is available to him.'"[24]

The Court acknowledged an exception to this general rule where a plaintiff points to "a special circumstance affecting the reliability of the market price as an unbiased assessment of the security's value in light of all public information . . . that would make reliance on the market's valuation imprudent."[25] Put another way, "unless some 'special circumstance[]' makes the market price unreliable, 'ERISA fiduciaries . . . may, as a general matter . . . prudently rely on the market price' as a fair assessment of a stock's value."[26]

Kopp would escape this general principle in two ways. First, he argues that a stock's "riskiness" should be a separate consideration from its valuation.

---

[21] *Fifth Third Bancorp v. Dudenhoeffer*, 134 S. Ct. 2459, 2471–72 (2014).

[22] *Id.* at 2471.

[23] *Id.* (internal quotation marks omitted).

[24] *Id.* at 2471–72 (quoting *Summers v. State Street Bank & Trust Co.*, 453 F.3d 404, 408 (7th Cir. 2006)).

[25] *Id.* at 2742 (internal quotation marks omitted) (internal citations omitted).

[26] *Singh*, 882 F.3d at 145 (quoting *Dudenhoeffer*, 134 S. Ct. at 2741).

No. 16-11590

But this distinction is illusory.[27] In an efficient market, a stock's valuation accounts for its riskiness. And "although *Dudenhoeffer* was primarily framed in terms of overvalued-stock allegations, it applies equally to [Kopp's] public-information claims premised on excessive risk."[28] Thus, Kopp can only get around *Dudenhoeffer* if he alleges a special circumstance that would render reliance on the market's valuation imprudent.

So, Kopp argues that the Defendants' alleged fraud is a special circumstance. As Kopp would have it, the Defendants "knew that it was inappropriate to rely on the market price of Idearc stock because their own fraudulent activities had caused the public markets to overvalue Idearc stock." But the alleged fraud is by definition not public information, and Kopp does not address how this insider information would affect the reliability of the market price "as an unbiased assessment of the security's value *in light of all public information*."[29] As such, it is not the type of "special circumstance" contemplated by the Supreme Court. Yet *Dudenhoeffer* provides a separate mechanism for evaluating claims based on nonpublic information, and "[w]e decline to redundantly label the possession of nonpublic information a special circumstance."[30] In the district court, Kopp did urge a duty-of-prudence claim based on nonpublic information, but he has not pressed that argument on appeal. Thus, the district court properly dismissed Kopp's substantive duty-of-prudence claim in light of *Dudenhoeffer*.

---

[27] *See id.*

[28] *Id.* at 146. *See also Dudenhoeffer*, 134 S. Ct. at 2464 (noting that "[t]he complaint alleges that . . . the fiduciaries knew or should have known that Fifth Third's stock was overvalued or excessively risky").

[29] *Dudenhoeffer*, 134 S. Ct. at 2471 (emphasis added).

[30] *Singh*, 882 F.3d at 146.

No. 16-11590

## B.

In *Tibble v. Edison International*, the Supreme Court held that ERISA fiduciaries have "a continuing duty of some kind to monitor investments and remove imprudent ones."[31] Kopp argues that—apart from any substantive imprudence—the Defendants breached their "procedural" duty of prudence by failing to meet and discuss a possible course of action regarding the Plan's investment in Idearc stock. Specifically, he claims that while Defendants may have had a range of possible options available to them, "[i]f their choice among those options flowed from a lethargic failure to consider the possibility of changing course, it amounts to a breach" of the duty of prudence.

Kopp's argument overlooks the fact that even if the Defendants' actions were procedurally imprudent, a fiduciary is liable only for "losses to the plan resulting from" that breach.[32] *Tibble* does not change this analysis.[33] Thus, Kopp's duty-of-prudence claim cannot rest solely on the Defendants' procedural failings. Instead, Kopp must allege facts to support the conclusion that the Defendants would have acted differently had they engaged in proper monitoring—and that an alternative course of action could have prevented the Plan's losses. Put another way, Kopp must allege that the Defendants' supposed procedural failings led to the Plan's losses.[34] He does not do so here.

---

[31] *Tibble v. Edison Int'l*, 135 S. Ct. 1823, 1828–29 (2015). *See also Singh*, 882 F.3d at 147 ("*Tibble* establishes that ERISA fiduciaries have a continuing duty to monitor the prudence of plan investments.").

[32] 29 U.S.C. § 1109(a).

[33] *Cf. Singh*, 882 F.3d at 147 ("Plaintiffs did not plausibly allege that the purported lack of investigation had any effect on the reliability of the market price, so it cannot be a special circumstance under *Dudenhoeffer*.").

[34] *See Saumer v. Cliffs Natural Resources Inc.*, 853 F.3d 855, 863 (6th Cir. 2017) ("[A]lthough a fiduciary generally must investigate an investment's merits, a fiduciary's failure to investigate an investment decision *alone* is not sufficient to show that the decision was not reasonable.") (internal quotation marks omitted). *See also In re Lehman Brothers Sec. & ERISA Litig.*, 113 F.Supp.3d 745, 756–58 (S.D.N.Y. 2015), *aff'd*, *Rinehart v. Lehman Bros. Holdings, Inc.*, 817 F.3d 56, 66 n.3 (2d Cir. 2016).

No. 16-11590

Because Kopp has not plausibly alleged an alternative action that the Defendants would have taken if they had "consider[ed] the possibility of a response to the rapidly increasing instability of Idearc," we affirm the dismissal of his duty-of-prudence claim.

C.

ERISA imposes a stringent duty of loyalty on fiduciaries.[35] Under § 404, an ERISA fiduciary must "discharge his duties with respect to a plan solely in the interest of participants and beneficiaries and . . . for the exclusive purpose of: (i) providing benefits to participants and their beneficiaries; and (ii) defraying reasonable expenses of administering the plan[.]"[36]

Kopp alleges that the Defendants "managed the Plan under a direct conflict of interest" because "their personal wealth [was] directly tied to Idearc's financial performance." He claims that because of that conflict, the Defendants engaged in "a pattern of behavior that benefitted [Idearc] and Defendants, to the detriment of employees." Specifically, he claims that the Defendants participated in "a concerted scheme to hide adverse information about Idearc for as long as possible" in order to benefit their personal interests and those of Idearc. Kopp argues that while the Defendants' actual motivations may be a question of fact, he has "robustly pleaded" that the Defendants breached their duty of loyalty. We disagree.

Kopp's allegations do not "give rise to a plausible inference that Defendants' concern about the stock price was self-serving."[37] At most, the TAC alleges that the Defendants took steps to protect the value of Idearc stock—a course of action that is equally consistent with protecting the Plan's existing

---

[35] "ERISA's duty of loyalty is the highest known to the law." *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir. 2000) (internal quotation marks omitted).

[36] 29 U.S.C. § 1104(a)(1).

[37] *Singh*, 882 F.3d at 150.

No. 16-11590

holdings of Idearc stock. Kopp asks us to infer that the Defendants acted with inappropriate motivations because they stood to gain financially from Idearc's success. But the potential for a conflict, without more, is not synonymous with a plausible claim of fiduciary disloyalty.[38] The district court's dismissal of this claim was proper.

## IV.

For the foregoing reasons, we AFFIRM the district court's judgment.

---

[38] *Cf. id.* ("We decline to adopt a rule that would make stock ownership, without more, synonymous with a plausible claim of fiduciary disloyalty.").