# IN THE UNITED STATES COURT OF APPEALS
## FOR THE FIFTH CIRCUIT

United States Court of Appeals
Fifth Circuit

**FILED**

May 22, 2020

Lyle W. Cayce
Clerk

No. 18-20379

————

JEFFERY SCHWEITZER; JONATHAN SAPP; RAUL RAMOS; DONALD
FOWLER,

　　　　　Plaintiffs - Appellants

v.

THE INVESTMENT COMMITTEE OF THE PHILLIPS 66 SAVINGS PLAN;
SAM FARACE; JOHN DOES 1-10, INCLUSIVE,

　　　　　Defendants - Appellees

————

Appeal from the United States District Court
for the Southern District of Texas

————

Before HIGGINBOTHAM, SMITH, and HIGGINSON, Circuit Judges.

PATRICK E. HIGGINBOTHAM, Circuit Judge:

Four participants in Phillips 66's retirement plan bring this putative class action against the plan's Investment Committee for breach of fiduciary duties under the Employee Retirement Income Security Act. They allege that the Defendants failed to monitor properly and divest ConocoPhillips stock from the retirement plan. The district court granted Defendants' motion to dismiss for failure to state a claim, and Plaintiffs timely appealed. We affirm.

No. 18-20379

I.

In 2012, ConocoPhillips Corporation, a large oil and gas company, spun off Phillips 66 as a separate, independent company. ConocoPhillips retained its upstream business, namely exploration and production, while Phillips 66 took on the downstream business, including refining, marketing, and transportation operations.

With the separation, 12,000 ConocoPhillips employees became employees of Phillips 66. Many of them had held assets in individual retirement accounts in the ConocoPhillips Savings Plan at the time of the separation. These accounts included large investments in two single-stock funds comprised of ConocoPhillips stock. As a result of the separation, each employee received one share of Phillips 66 stock for every two shares of ConocoPhillips stock held in their account. Afterward, Phillips 66 employees had $2.9 billion in ConocoPhillips Plan assets, including $1.1 billion invested in the ConocoPhillips Funds. The ConocoPhillips Plan transferred these assets to the Phillips 66 Savings Plan, the newly established retirement plan for Phillips 66 employees. After the transfer, Phillips 66 Plan participants could retain or sell their investments in the ConocoPhillips Funds, but could not make new investments in the Funds.

As the Phillips 66 Plan is a defined contribution plan, each participant has an individual account and benefits are based on the amounts contributed to that participant's account.[1] Plan participants decide how much to contribute to their accounts and how to allocate their assets among an array of investment options selected by the Plan's Investment Committee. The Phillips 66 Plan allows participants to invest in two single-stock funds comprised of Phillips 66

---

[1] A defined benefit plan, by contrast, promises employees fixed payments and retains full responsibility for investing the plan's assets.

No. 18-20379

stock.[2] Just a few months after the spin-off, the Plan had $1.1 billion invested in the ConocoPhillips Funds and $0.9 billion in the Phillips 66 Funds. Together, these funds accounted for 58% of the Plan's assets.

When ConocoPhillips spun off Phillips 66 on April 30, 2012, ConocoPhillips's share price was about $55. Over the next two years, its share price increased by more than 50%, reaching $86 by June 2014. Plaintiffs allege, however, that by the second half of 2014, there were red flags indicating ConocoPhillips was a risky investment. Plaintiffs point to publicly available information, including declining share prices, uncertainty in the price of oil, and Berkshire Hathaway's sale of its stake in ConocoPhillips. ConocoPhillips's share price fell to $69 by the end of 2014, $46 by the end of 2015, and $40 by February 2016. When Plaintiffs filed this lawsuit in October 2017, the share price was $50.[3]

Plaintiffs allege that the Investment Committee and its members (the "Fiduciaries") breached their fiduciary duties of diversification and prudence under ERISA by failing to independently review the merits of divesting the ConocoPhillips Funds. According to Plaintiffs, the Fiduciaries incorrectly believed that ConocoPhillips was a "qualifying employer securit[y]," an ESOP, and thus exempt from certain diversification requirements.[4]

The district court held that Plaintiffs failed to state a claim based on the duty to diversify because the Phillips 66 participants were not allowed to make new investments in the ConocoPhillips Funds and could elect to exchange their assets out of the Funds at any time. It also held that Plaintiffs' duty-of-

---

[2] The Phillips 66 Plan is an Eligible Individual Account Plan, which like an employer stock option plan "offer[s] ownership in employer stock as an option to employees." *Amgen Inc. v. Harris*, 136 S. Ct. 758, 758 (2016) (per curiam).

[3] "We can, of course, take judicial notice of stock prices." *Catogas v. Cyberonics, Inc.*, 292 F. App'x 311, 316 (5th Cir. 2008) (unpublished) (per curiam).

[4] *See* 29 U.S.C. § 1104(a)(2).

No. 18-20379

prudence claim was foreclosed by the Supreme Court's holding in *Fifth Third Bancorp v. Dudenhoeffer*.[5] This appeal followed.

## II.

"This court reviews de novo a district court's grant or denial of a Rule 12(b)(6) motion to dismiss, 'accepting all well-pleaded facts as true and viewing those facts in the light most favorable to the plaintiff[.]'"[6] "To survive a motion to dismiss, a complaint must contain sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'"[7] "A claim has facial plausibility when the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged."[8] However, "the tenet that a court must accept as true all of the allegations contained in a complaint is inapplicable to legal conclusions" or "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements."[9]

## III.

ERISA governs employee benefit plans and their invested funds. Congress enacted the statute to "promote the interests of employees and their beneficiaries" in these funds.[10] To that end, ERISA fiduciaries are assigned "a number of detailed duties and responsibilities, which include 'the proper management, administration, and investment of [plan] assets, the maintenance of proper records, the disclosure of specified information, and the

---

[5] 573 U.S. 409 (2014).

[6] *True v. Robles*, 571 F.3d 412, 417 (5th Cir. 2009) (quoting *Stokes v. Gann*, 498 F.3d 483, 484 (5th Cir. 2007)).

[7] *Ashcroft v. Iqbal*, 556 U.S. 662, 678 (2009) (quoting *Bell Atl. Corp. v. Twombly*, 550 U.S. 544, 570 (2007)).

[8] *Id.* (citing *Twombly*, 550 U.S. at 556).

[9] *Id.* (citing *Twombly*, 550 U.S. at 555).

[10] *Shaw v. Delta Air Lines, Inc.*, 463 U.S. 85, 90 (1983).

avoidance of conflicts of interest.'"[11] Their duties to plan participants are "derived from the common law of trusts"[12] and are "the highest known to the law."[13]

Section 1104(a)(1) sets out "several overlapping duties."[14] The duty of prudence requires a fiduciary to "discharge his duties . . . . with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."[15] The duty to diversify requires a fiduciary to "diversify[] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so."[16] ERISA also requires fiduciaries to adhere to a duty of loyalty and to act in accordance with the plan insofar as it does not conflict with the Act.[17] To state a claim under this section, a plaintiff must plausibly allege that a fiduciary breached one of these duties, causing a loss to the employee benefit plan.[18]

Plaintiffs contend that the Fiduciaries breached their duty to diversify under § 1104(a)(1)(C) and their duty of prudence under § 1104(a)(1)(B) by failing to consider reducing their holdings in the ConocoPhillips Funds.

---

[11] *Mertens v. Hewitt Assocs.*, 508 U.S. 248, 251–52 (1993) (quoting *Mass. Mut. Life Ins. Co. v. Russell*, 473 U.S. 134, 142–43 (1985)).

[12] *Tibble v. Edison Int'l*, 575 U.S. 523, 135 S. Ct. 1823, 1828 (2015) (quoting *Cent. States, Se. & Sw. Areas Pension Fund v. Cent. Transp., Inc.*, 472 U.S. 559, 570 (1985)).

[13] *Tatum v. RJR Pension Inv. Comm.*, 761 F.3d 346, 356 (4th Cir. 2014) (quoting *Donovan v. Bierwirth,* 680 F.2d 263, 272 n.8 (2d Cir. 1982)).

[14] *Bussian v. RJR Nabisco, Inc.*, 223 F.3d 286, 294 (5th Cir. 2000).

[15] 29 U.S.C. § 1104(a)(1)(B).

[16] *Id.* § 1104(a)(1)(C).

[17] *Id.* § 1104(a)(1)(A), (D).

[18] *Braden v. Wal-Mart Stores, Inc.*, 588 F.3d 585, 594 (8th Cir. 2009).

No. 18-20379

A.

The Fiduciaries first argue that Plaintiffs' claims never get off the ground because the ConocoPhillips Funds are "qualifying employer securities," which are statutorily exempt from "the diversification requirement of [§ 1104(a)(1)(C)] and the prudence requirement (only to the extent that it requires diversification) of [§ 1104(a)(1)(B)]."[19] The Fiduciaries contend that the ConocoPhillips Funds were employer securities when they were issued by ConocoPhillips and therefore retained that status after separating from Phillips 66.

But ERISA's plain text does not support this conclusion. A qualifying employer security is a "security issued by an employer of employees covered by the plan, or by an affiliate of such employer."[20] An employer is a party "*acting* directly as an employer, or indirectly in the interest of an employer, in relation to an employee benefit plan."[21] So an employer security is one that is issued by a party "acting . . . as an employer" "of employees covered by the plan."[22]

Although ConocoPhillips had employed the Phillips 66 Plan's participants, Phillips 66 is the only entity now "acting" as the employer of employees covered by the Phillips 66 Plan. The ConocoPhillips Funds are qualifying employer stock only if they were issued by Phillips 66.[23] They were not. The ConocoPhillips Funds were not "employer securities" after the spin-off and were no longer exempt from the duties under § 1104(a)(1)(B) and (C).

---

[19] 29 U.S.C. § 1104(a)(2).

[20] 29 U.S.C. § 1107(d)(1); *see id.* § 1107(d)(5).

[21] *Id.* § 1002(5) (emphasis added).

[22] *Id.* §§ 1002(5), 1107(d)(1).

[23] Our reading of the statute is informed by a private letter ruling by the Internal Revenue Service. I.R.S. Priv. Ltr. Rul. 201427024 (July 3, 2014). As the district court noted, although the IRS's interpretation is not binding, it has persuasive force "because it addresses the precise issue in question—whether an employer security retains that character after a spinoff."

6

No. 18-20379

B.

Under § 1104(a)(1)(C), fiduciaries have a duty to "diversify[] the investments of the plan so as to minimize the risk of large losses, unless under the circumstances it is clearly prudent not to do so."[24] This duty looks to a pension plan as a whole, not to each investment option.[25] Plaintiffs argue that the Fiduciaries breached this duty by holding an excessive percentage of Plan assets in ConocoPhillips Funds, exposing participants to a high risk of large losses. They rely primarily on a case in which fiduciaries for a defined benefit plan breached their duty to diversify by placing 23% of plan assets in a single investment.[26]

But the duty to diversify under § 1104(a)(1)(C) imposes obligations on fiduciaries for defined benefit plans that are different from those for defined contribution plans, like the Phillips 66 Plan. As fiduciaries for defined benefit plans choose the investments and allocate the plan's assets, they must ensure the plan's assets as a whole are well diversified. The fiduciaries for a defined contribution plan, however, only select investment options; the participants then choose how to allocate their assets to the available options. These fiduciaries therefore need only provide investment options that enable participants to create diversified portfolios; they need not ensure that participants actually diversify their portfolios.[27] Plaintiffs have not alleged

---

[24] *Id.* § 1104(a)(1)(C).

[25] *Young v. Gen. Motors Inv. Mgmt. Corp.*, 325 F. App'x 31, 33 (2d Cir. 2009) (unpublished) (emphasis added) ("The language of [§ 1104(a)(1)(C)] contemplates a failure to diversify claim when a plan is undiversified *as a whole*.").

[26] *Marshall v. Glass/Metal Ass'n & Glaziers & Glassworkers Pension Plan*, 507 F. Supp. 378, 384 (D. Haw. 1980).

[27] *See, e.g., Yates v. Nichols*, 286 F. Supp. 3d 854, 864 (N.D. Ohio 2017) ("[T]he plan participants themselves—rather than the [fiduciaries]—decide how to allocate their contributions among the plan's investment options. The [fiduciaries], in other words, have no ability to enforce the diversification requirement on the participants. All they can do, it would seem, is offer a diversified menu of investment options. What seems most critical, then, at

No. 18-20379

that the Fiduciaries did not offer sufficient investment options or failed to warn Plan participants of the risk of a concentrated portfolio, as we will explain. As a result, their § 1104(a)(1)(C) claim fails.

C.

The duty of prudence requires that fiduciaries act "with the care, skill, prudence, and diligence under the circumstances then prevailing that a prudent man acting in a like capacity and familiar with such matters would use in the conduct of an enterprise of a like character and with like aims."[28] Fiduciaries must determine that each investment "is reasonably designed, as part of the portfolio[,] . . . to further the purposes of the plan, taking into consideration the risk of loss and the opportunity for gain."[29] They also must "give[] appropriate consideration to those facts and circumstances that . . . [they] know[] or should know are relevant to the particular investment."[30] In short, prudence requires fiduciaries to consider the totality of the circumstances.[31] In so doing, fiduciaries must engage in a reasoned decision-making process for investigating the merits of each investment option[32] and ensure that each one "remain[s] in the best interest of plan participants."[33]

---

least in terms of the [fiduciaries'] diversification duty, is the range of investment options available to the participants.").

[28] 29 U.S.C. § 1104(a)(1)(B).

[29] 29 C.F.R. § 2550.404a-1(b)(2)(i).

[30] *Id.* § 2550.404a-1(b)(1)(i); *see Langbecker v. Elec. Data Sys. Corp.*, 476 F.3d 299, 307 n.13 (5th Cir. 2007) (citing § 2550.404a-1(b)(1)(i)–(ii)).

[31] *Bussian*, 223 F.3d at 299 ("What the appropriate methods [of investigation] are in a given situation depends on the 'character' and 'aim' of the particular plan and decision at issue and the 'circumstances prevailing' at the time a particular course of action must be investigated and undertaken."); *Donovan v. Cunningham*, 716 F.2d 1455, 1467 (5th Cir. 1983) ("The prudent man rule as codified in ERISA is a flexible standard[.]"); *DiFelice v. U.S. Airways, Inc.*, 497 F.3d 410, 420 (4th Cir. 2007) (explaining that evaluating the prudence of an investment decision requires a totality-of-the-circumstances inquiry that takes into account "the character and aim of the particular plan and decision at issue and the circumstances prevailing at the time") (internal quotation marks omitted).

[32] *Langbecker*, 476 F.3d at 308 n.18; *see also DiFelice,* 497 F.3d at 423.

[33] *Tatum*, 761 F.3d at 358.

8

No. 18-20379

The parties engage over the prudence of retaining the ConocoPhillips Funds without undertaking a proper investigation. Plaintiffs allege that single-stock funds are inherently imprudent because they expose investors to extreme volatility and risk, and they argue that the duty of prudence requires each individual fund in a plan to be diversified. The Fiduciaries respond that the Plaintiffs' duty-of-prudence claim fails under the Supreme Court's decision in *Dudenhoeffer*, and that requiring each fund to be diversified would conflict with modern portfolio theory, which evaluates the prudence of an investment in the context of a portfolio as a whole.

1.

There are two wings of Plaintiffs' duty-of-prudence claim. The first alleges the Fiduciaries should have known from publicly available information that the stock market underestimated the risk of holding ConocoPhillips stock. *Dudenhoeffer* addressed this line of argument, holding that "where a stock is publicly traded, allegations that a fiduciary should have recognized *from publicly available information alone* that the market was over- or undervaluing the stock are implausible as a general rule, at least in the absence of special circumstances."[34] In so doing, *Dudenhoeffer* effectively foreclosed claims, like Plaintiffs', that a fiduciary should have known from public information that the market underestimated the risk of holding a publicly traded security.[35]

That said, *Dudenhoeffer* and its progeny do not apply to the second wing of Plaintiffs' argument: that the ConocoPhillips Funds were imprudent because of the risk inherent in failing to diversify. Unlike the claim in *Dudenhoeffer*, this claim does not turn on publicly available information or

---

[34] *Dudenhoeffer*, 573 U.S. at 426 (emphasis added).
[35] *See Kopp v. Klein*, 894 F.3d 214, 219–20 (5th Cir. 2018) (per curiam); *Singh v. RadioShack Corp.*, 882 F.3d 137, 146–47 (5th Cir. 2018) (per curiam).

whether Fiduciaries can beat the market.[36] Moreover, *Dudenhoeffer* and our subsequent decisions all involved employer securities, which are exempt from the duty of prudence "to the extent that it requires diversification."[37] They do not address the prudence of holding a single-stock fund in the first place. As a result, this second wing of Plaintiffs' duty-of-prudence claim does not implicate *Dudenhoeffer* and is not foreclosed by it.

2.

Plaintiffs claim that holding a single-stock fund is imprudent per se because of the risk inherent in holding an undiversified asset. But ERISA contains no prohibition on individual account plans' offering single-stock funds. Rather, it requires fiduciaries to provide in each benefit statement to participants "an explanation . . . of the importance . . . of a well-balanced and diversified investment portfolio, including a statement of the risk that holding more than 20 percent of a portfolio in the security of one entity (such as employer securities) may not be adequately diversified[.]"[38] A per se rule against single-stock funds would also conflict with the fact-specific focus of the duty of prudence,[39] as well as with ERISA's legislative history and implementing regulations, which clarify that single-stock investments can be a prudent investment option.[40]

---

[36] By the Efficient Market Hypothesis and modern portfolio theory, stock prices in efficient markets do not reflect risks that an investor could eliminate through diversification. JEFFREY J. HAAS, CORPORATE FINANCE 113 (2014) ("Under portfolio theory, the market return received by an investor on a particular stock in a competitive market does not include any compensation for the investor shouldering [business-specific] risk. Indeed, the market does not reward investors who fail to diversify this risk down to zero.").

[37] 29 U.S.C. § 1104(a)(2).

[38] *Id.* § 1025(a)(2)(B).

[39] *Tatum*, 761 F.3d at 360 (rejecting argument that "non-employer, single stock funds are imprudent *per se* due to their inherent risk") (alteration and internal quotation omitted).

[40] *Id.*; H.R. REP. NO. 93–1280 (1974) (Conf. Rep.), *reprinted in* 1974 U.S.C.C.A.N. 5038, 5085–86; 29 C.F.R. § 2550.404c–1(f)(5).

No. 18-20379

Yet, courts have expressed concern about the prudence of single-stock funds, recognizing that a single-stock investment option may be imprudent in some circumstances, as it may encourage investors to put too many eggs in one basket.[41] The Supreme Court has observed that, as single-stock funds, qualifying employer securities are "not prudently diversified."[42] Likewise, the Seventh Circuit recognized that because employer securities are undiversified, "[t]here is a sense in which" they are "imprudent per se, though legally authorized."[43] Because of the "built-in 'imprudence,'" the court warned that fiduciaries for plans investing in employer securities must be "especially careful to do nothing to increase the risk faced by the participants still further."[44] The Fourth Circuit also recognized in *DiFelice* that while there is no per se bar on single-stock funds, such funds "carr[y] significant risk, and so would seem generally imprudent for ERISA purposes."[45] Indeed, Plaintiffs have plausibly alleged that the ConocoPhillips Funds, by its resulting concentration of investment, became an imprudent investment with the spinoff.

But it does not follow that the Fiduciaries were obligated to force Plan participants to divest from the Funds. "ERISA does not require fiduciaries of [a defined contribution plan] to act as personal investment advisers to plan participants . . . Such a plan gives participants the control by design, and it

---

[41] *DiFelice*, 497 F.3d at 424 ("[A]lthough placing retirement funds in *any* single-stock fund carries significant risk, and so would seem generally *imprudent* for ERISA purposes, Congress has explicitly provided that qualifying concentrated investment in *employer* stock does not violate the 'prudent man' standard per se.").

[42] *Dudenhoeffer*, 573 U.S. at 416 (internal citation omitted).

[43] *Armstrong v. LaSalle Bank Nat. Ass'n*, 446 F.3d 728, 732 (7th Cir. 2006) (Posner, J.).

[44] *Id.*

[45] *DiFelice*, 497 F.3d at 424.

gives employees the responsibility and freedom to choose how to invest their funds."[46]

No "rule . . . forbids plan sponsors to allow participants to make their own choices."[47] ERISA imposed other obligations, which the Fiduciaries met. They repeatedly provided Plan participants with the statutorily mandated warning against holding "more than 20 percent of a portfolio in the security of one entity."[48] For example, Phillips 66's January 2016 Summary Plan Description highlighted the risk of holding a single-stock fund:

> Funds that hold the common stock of a single company, such as the Phillips 66 Stock Fund, are generally considered a higher risk investment than a fund that holds many different stocks, such as actively managed funds described above. The advantage of an actively managed fund is that not all of the stocks within a fund will have price movements in the same direction at the same time, and this reduces investment risk when compared to a single stock.

The Summary Plan Description also explained the importance of diversification to its participants:

> WHY DIVERSIFICATION MATTERS
>
> As the saying goes, "don't put all your eggs in one basket." This is especially true when investing for retirement. Maintaining a mix of stocks, bonds and short-term investments in your plan account can help manage your investment risk.
>
> This "diversification" is a key principle of sound investing. The idea is that when one type of asset is doing poorly, another may be doing well. For example, if your stock funds are losing value, your bond funds may be going up or holding steady. Of course, the opposite may also occur, where your bond funds lose value while your stock

---

[46] *White v. Marshall & Ilsley Corp.*, 714 F.3d 980, 994 (7th Cir. 2013), *abrogated by Dudenhoeffer*, 573 U.S. 409.

[47] *Loomis v. Exelon Corp.*, 658 F.3d 667, 673 (7th Cir. 2011). Nor does any rule bar fiduciaries from forcing divestment. *See Tatum*, 761 F.3d 346.

[48] 29 U.S.C. § 1025(a)(2)(B).

funds are going up. And there may be times when it seems that every type of investment is losing value.

How much of your account you should allocate to the different asset classes depends on you — your financial goals, your tolerance for risk, your other assets and needs, and how much time you have until retirement.

By closing the ConocoPhillips Funds to new investments immediately after the spin-off, the Fiduciaries also ensured that they were not offering participants an imprudent investment option.[49] At that point, while blocked from adding more "eggs to the basket," Plaintiffs were free to sell off their investments at any time and reinvest in other funds. With a rising market, they chose to retain the ConocoPhillips Funds for over two years, balancing the risk of a want of portfolio diversity against the rising values of ConocoPhillips stock—a risk against which the Fiduciaries urged caution. They cannot enjoy their autonomy and now blame the Fiduciaries for declining to second guess that judgment.

Finally, Plaintiffs argue that the district court erred in dismissing their claim that the Fiduciaries failed to comply with their duty "to follow a regular, appropriate, systematic procedure to evaluate the ConocoPhillips Funds as investments in the Plan." We considered and rejected a similar argument in *Kopp v. Klein*.[50] There, beneficiaries argued that—separate and "apart from any substantive imprudence—the [d]efendants breached their 'procedural' duty of prudence by failing to meet and discuss a possible course of action

---

[49] *See Langbecker*, 476 F.3d at 308 n.18 ("Under ERISA, the prudence of investments or classes of investments offered by a plan must be judged individually."); *see also DiFelice*, 497 F.3d at 423–24 (rejecting the view that "any single-stock fund, in which that stock existed in a state short of certain cancellation without compensation, would be prudent if offered alongside other, diversified Funds").

[50] 894 F.3d at 221.

## No. 18-20379

regarding the Plan's investment in [the challenged] stock."[51] Their claim failed, however, as it rested solely on the fiduciaries' procedural lapses.[52] Plaintiffs' claim here fails for the same reason.

### IV.

We affirm the district court's dismissal of Plaintiffs' suit.

---

[51] *Id.* at 220–21.

[52] *Id.* at 221; *accord Brown v. Medtronic, Inc.*, 628 F.3d 451, 461 (8th Cir. 2010) (holding that a claim alleging a breach of the duty to monitor and inform the plan committee "cannot survive without a sufficiently pled theory of the underlying breach" of the duty-of-prudence claim).